**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ATHENS DIVISION**

| | | |
|---|---|---|
| JAMES E. HAWES, | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | CASE NO. 3:07-CV-92 (CDL) |
| | : | Social Security Appeal |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of Social Security, | : | |
| | : | |
| Respondent. | : | |

## REPORT AND RECOMMENDATION

The Social Security Commissioner, by adoption of the Administrative Law Judge's determination, denied Claimant's application for a period of disability and disability insurance benefits, finding that he was not disabled within the meaning of the Social Security Act and Regulations. Claimant contends that the Commissioner's decision was in error, and he seeks review under the relevant provisions of 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c). All administrative remedies have been exhausted.

## LEGAL STANDARDS

The court's review of the Commissioner's decision is limited to a determination of whether it is supported by substantial evidence and whether the correct legal standards were applied. *Walker v. Bowen*, 826 F.2d 996 (11th Cir. 1987). Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971). The court's role in reviewing claims brought under the Social

Security Act is a narrow one. The court may not decide facts, reweigh evidence, nor substitute its judgment for that of the Commissioner.[1] *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). It must, however, decide if the Commissioner applied the proper standards in reaching a decision. *Harrell v. Harris*, 610 F.2d 355, 359 (5th Cir. 1980). The court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings. *Bloodsworth v. Heckler*, 703 F.2d at 1239. However, even if the evidence preponderates against the Commissioner's decision, it must be affirmed if substantial evidence supports it. *Id.* The initial burden of establishing disability is on the claimant. *Kirkland v. Weinberger*, 480 F.2d 46 (5th Cir. 1973). The claimant's burden is a heavy one and is so stringent that it has been described as bordering on the unrealistic. *Oldham v. Schweiker*, 660 F.2d 1078 (5th Cir. 1981).

A claimant seeking Social Security disability benefits must demonstrate that she suffers from an impairment that prevents her from engaging in any substantial gainful activity for a twelve-month period. 42 U.S.C. § 423(d)(1). In addition to meeting the requirements of these statutes, in order to be eligible for disability payments, a claimant must meet the requirements of the Commissioner's regulations promulgated pursuant to the authority given in the Social Security Act. 20 C.F.R. § 404.1 et seq.

Under the regulations, the Commissioner determines if a claimant is disabled by a

---

[1] Credibility determinations are left to the Commissioner and not to the courts. *Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir. 1991). It is also up to the Commissioner and not to the courts to resolve conflicts in the evidence. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). See also *Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1986).

five-step procedure. 20 C.F.R. § 404.1520, Appendix 1, Part 404. First, the Commissioner determines whether the claimant is working. Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities. Next, the Commissioner determines whether the claimant's impairment(s) meets or equals an impairment listed in Appendix 1 of Part 404 of the regulations. Fourth, the Commissioner determines whether the claimant's residual functional capacity can meet the physical and mental demands of past work. Finally, the Commissioner determines whether the claimant's residual functional capacity, age, education, and past work experience prevent the performance of any other work. In arriving at a decision, the Commissioner must consider the combined effect of all the alleged impairments, without regard to whether each, if considered separately, would be disabling. *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984). The Commissioner's failure to apply correct legal standards to the evidence is grounds for reversal. *Id.*

## ISSUE

I. **Whether the ALJ erred in finding that Claimant's mental impairment did not meet Listing 12.05?**

### Administrative Proceedings

Claimant filed an application for a period of disability and Supplemental Security Income on March 21, 2003. (R-10, p.1). His application for benefits was denied initially and upon reconsideration. Claimant then requested a hearing which was held on February

3

16, 2006. (T-175-202). The ALJ denied Claimant's application on March 22, 2006. (T-11-23). Claimant then requested review of the ALJ's decision by the Appeals Council. Thereafter, on May 15, 2005, the Council issued an order denying review, making it the final decision of the Commissioner. (T-4-6).

**Statement of Facts and Evidence**

The Claimant alleges he is disabled due to mental retardation, gastritis, a back injury, and severe pain in his knees and neck. (R-10, p. 4). After examining the medical records the ALJ determined that the claimant had gastritis, borderline intellectual functioning, and alcohol abuse, which he found to be severe within the meaning of the regulations. (T-16-18). The ALJ found that Claimant was capable of performing work at the medium exertional level, lifting no more than fifty (50) pounds at a time with frequent lifting or carrying of objects weighing up to twenty-five (25) pounds. (T-18). The ALJ further found that "[m]entally, the claimant is limited to simple, non-detailed tasks that do not involve interaction with the general public and that are repetitive in nature so as not to require adaptation to changes in routine." *Id*. The ALJ also found that due to Claimant's abuse of alcohol, Claimant was "more likely than the average person to be late or not show up for work" and that Claimant's "alcohol abuse would likely cause the claimant to miss more than two or three days of work per month." *Id*. The ALJ determined that if Claimant stopped the substance abuse, he would still be unable to perform his past relevant work, but Claimant would be capable of performing work at the medium exertional level, restricted to simple, non-detailed tasks that do not involve interaction with the general public and that are

repetitive in nature so as not to require adaptation to changes in routine. (T-20-21). After consulting a Vocational Expert, the ALJ found that if Claimant stopped the substance abuse, there would be a significant number of jobs in the national economy that the claimant could perform. (T-21). The ALJ determined that "[b]ecause the claimant would not be disabled if he stopped [the] substance use (20 CFR § 416.920(g)), the claimant's substance use disorder is a contributing factor material to the determination of disability (20 CFR § 416.935)," and as such, the ALJ found that Claimant was not disabled. (T-22).

I.  **Whether the ALJ erred in finding that the Claimant's mental impairment did not meet Listing 12.05?**

Listing 12.05 is entitled Mental Retardation and Autism. Mental retardation is noted to refer to a significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period (before age twenty-two). Listing 12.05C, then, is satisfied where the Claimant can show he had defective intellectual functioning which manifested itself before the age of twenty-two and that the claimant has a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, Section 12.05 and 12.05C. *See also* 20 C.F.R. Pt. 404, Subpt. P, App. 1, Section 12.00D. "Significant" means an additional impairment that is more than slight or minimal, but it need not be "severe." *Edwards by Edwards v. Heckler*, 755 F.2d 1513, 1515 (11th Cir. 1985).

The Claimant contends that the ALJ erred in finding that he was not disabled pursuant

to Listing 12.05C, where he satisfied both prongs of the 12.05C requirement. (R-10, p. 4-7). Specifically, the Claimant states that he met the first prong of the Listing because when tested by Lloyd Stephen Miller, Ph.D., the Welsher Adult Intelligence Scale IQ test revealed that Claimant possessed a verbal IQ score of 66, a performance IQ of 67 and a full scale score of 63. (R-10, p. 4 and T-118). The Claimant further argues that where the ALJ found that he had other severe impairments, including gastritis, Claimant meets the second prong of the listing for a mental impairment. (R-10, p. 4).

Claimant contends that the ALJ's finding that he had borderline intellectual functioning instead of metal retardation under Listing 12.05C is unsupported. (R-10, p. 5). Claimant argues that although the ALJ "acknowledged [Claimant's] IQ scores fall within the range required by Listing 12.05C, he refused to rule that [Claimant's] condition meets or equals the listing." *Id*. Claimant argues that the ALJ's justification for said finding requires a leap in logic. *Id*. Claimant acknowledges that the consultative examiner stated in his report, "[i]t is important to note that Mr. Hawes comes from an academically deprived childhood history and that IQ scores are [n]egatively impacted by poor academic experience." (T-118, and R-10, p. 5). Claimant also argues that "[i]t is clear and undisputed that [Claimant's] intellectual deficiencies were present long before the age of twenty-two. He was only able to advance through the third grade and is completely illiterate." *Id*. Claimant further contends that his intellectual functioning has impaired his daily functioning. (R-10, p. 6-7).

6

Regarding Claimant's mental limitations, the ALJ noted the following in his Findings:

> On July 29, 2003, the claimant submitted to a psychological examination conducted by L. Stephen Miller, Ph.D., at the request of the Disability Adjudication Section. The claimant attained a verbal IQ of 66, a performance IQ of 67 and a full scale IQ of 63. Dr. Miller opined that these were likely valid, although reflective of his limited 3rd grade education rather than cognitive problems per se. The claimant was able to follow three step verbal commands and one step written commands, and his memory skills were intact. The claimant reported activities of daily living to include caring for his own grooming and hygiene, cleaning, cooking, outdoor chores, watching television and short walks to the store. Dr. Miller diagnosed the claimant with borderline intellectual functioning (Exhibit 4).
>
> . . . The claimant's borderline intellectual functioning does not meet listing 12.05C as there is no evidence of sub-average general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period. In fact, there is evidence to the contrary. The claimant worked doing heavy unskilled labor for many years prior to his alleged onset date.
>
> The claimant's activities of daily living and social functioning are essentially intact with the claimant caring for his own grooming and hygiene, cooking, cleaning, grocery shopping, and visiting friends and family. His limitations in the area of concentration, persistence and pace are moderate at best, and that is more the result of limited education and alcohol abuse rather than a cognitive impairment. The claimant was able to follow three step verbal commands and one step written commands, and his memory skills were intact. He was able to persist to completion all tasks requested by the consultative examiner. There have been documented episodes of decompensation.

(T-17-18). After receiving Claimant's reported information and examining the test scores,

7

Dr. Miller found that Claimant was borderline intellectual functioning, not mentally retarded, and had adequate cognitive status. (T-120). Dr. Miller further found that there was no indication that Claimant's borderline intellectual functioning or cognitive status "should negatively impact his ability to work in positions similar to those he has maintained in the past." *Id*. Dr. Miller also opined that while he believed Claimant was capable of making adequate decisions regarding his personal finances, Claimant may need assistance in management due to his reading and writing difficulties. *Id*.

It should be noted here that the Eleventh Circuit has held that the ALJ is not required to accept a claimant's I.Q. scores and may reject scores that are inconsistent with the record. Test results of this sort should be examined "in conjunction with other medical evidence and the claimant's daily activities and behavior." *Popp v. Heckler*, 779 F.2d 1497, 1500 (11th Cir. 1986). Furthermore, *Lowery v. Sullivan,* a 1992 case from the Eleventh Circuit, held that a valid IQ score is not conclusive of mental retardation if the score is not consistent with other evidence of record. *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992). Therefore, it was proper for the ALJ to examine the record in assessing the reliability of Claimant's scores.

In the case at bar, Claimant has not provided any evidence of a diagnosis of mental retardation. In fact, three consulting psychologists, who considered Claimant's mental health records and IQ scores, found that Claimant did not meet the listing for mental retardation, but instead had severe impairments related to borderline intellectual functioning and alcohol abuse. (T-119-120, 125, 127, 138). As previously stated, a valid IQ score is

8

not conclusive of mental retardation if it is not consistent with other evidence of record. *Lowery v. Sullivan*. 979 F.2d 837. The ALJ found that Claimant's overall scores place him in the Borderline Range of Intellectual Functioning, in accordance with the diagnosis of Dr. Miller and the consulting examiners, and the evidence of record. (T-119-120, 125, 127, 138). Thus, the ALJ correctly determined that Claimant's intellectual functioning did not meet Listing 12.05C.

## CONCLUSION

In reviewing the record, no evidence of error is found to substantiate Claimant's contentions that the ALJ erred in finding Claimant's mental impairment does not meet Listing 12.05. The decision of the Commissioner is supported by substantial evidence. Furthermore, the record fails to reveal evidence of the ALJ acting outside of his judicial role in determining the extent of the Claimant's disability.

**WHEREFORE**, it is the recommendation to the United States District Judge that the decision of the defendant Commissioner of Social Security be **AFFIRMED**.

Pursuant to 28 U.S.C. § 636(b)(1), Claimant may serve and file written objections to this recommendation with the UNITED STATES DISTRICT JUDGE within ten (10) days after being served a copy of this recommendation.

THIS the 27th day of August, 2008.

S/ G. MALLON FAIRCLOTH
UNITED STATES MAGISTRATE JUDGE

mZc